Good morning, Your Honors. May it please the Court. Christopher Morris on behalf of Appellant Will Walters. I'd like to reserve three minutes for rebuttal, if I may. Your Honors, in the lead-up to the 2011 San Diego Gay Pride Parade Festival, Lieutenant Nieslit stood in front of the crowd of organizers and attendees at the parade and announced that the public nudity enforcement posture that was enforced at special events would be changing, that the one-inch strip rule of the past was being abandoned, and that a new rule requiring that buttocks and the entirety of the buttocks be covered. What was left unsaid at that meeting was that this rule was being adopted only for gay pride. What was left unsaid was that this rule was motivated by a desire to lessen the public nudity only at gay pride. What was left unsaid was that this rule was going to be selectively enforced against attendees at gay pride and nowhere else. In our complaint, we allege violations of the 14th Amendment Equal Protection Clause, and those break down under two avenues, one on the policy and one on an individualized selective enforcement. I'd like to first address the policy argument. In order to determine whether or not a policy was in play here, the first question is, did Lieutenant Nieslit have the authority to speak on behalf of the city? Was he a Monell policymaker? The evidence in this case was that when he announced the new rule, he said, I'm in charge of all special events. These are my events. And when he approached Mr. Walters in this case, he stated, my opinion is the only one that matters. I'm in charge here. So was he adopting this new policy just for this parade? Or was it the new policy going forward? That's an interesting question. The deposition testimony was, and this is from Nieslit himself, was that this policy was motivated by a request to decrease the nudity just at Gay Pride. Is that what he testified to, just at Gay Pride? That's what he testified, was the impetus behind the policy. Okay, that may have been the impetus, but was it going to be the policy going forward for all alleged nudity in the San Diego, in his jurisdiction? That was his testimony deposition, was that it was his intent to enforce this. His intent was that this would be enforced equally. But the evidence... Going forward. Correct. But the evidence is wholly unsupportive of that intent. There is no evidence that this policy was enforced at any other special event. No evidence whatsoever. After the Gay Pride. Correct. And in this case... And there were subsequent events. Yeah, there's probably 30 to 40 special events in the city of San Diego that are policed by Nieslit and his team, which consists of a sergeant and an officer. And then other officers that fill in on his team, but he's the person in charge. So we have the OTL tournament, which is the over-the-line tournament, softball tournament played in bathing suits on city park land. Record is replete with photos of women wearing G-strings and thongs without issue. In fact, an investigator was able to capture a photo of these officers, Officer Becker, a person on Nieslit's team, standing next to a woman in a G-string who had just competed in the beauty contest, in was issued for public nudity, was produced. There are no tickets for anybody wearing a G-string other than Mr. Walters. After the announcement of this policy. Correct. No tickets. So not only do you have no evidence that this was enforced at any other special event, you have no evidence that this is enforced on any other beaches, parks, and bays. We presented declarations from recently retired officers, many of whom were on the beach enforcement team, who testified there's not a problem with G-strings on any San Diego beaches, parks, and bays. It's just not an issue. There's nothing we enforce. Interesting, there's another event in the city of San Diego called Comic-Con, which is fairly famous. And in his deposition, Lieutenant Nieslit tried to say that I enforced this at Comic-Con. In fact, I kicked out this model dressed as Aeon Flux, and I kicked her out. We were able to find the official statement from the San Diego Police Department from Andre Brown, who was their spokesperson, who said, whatever Ms. Flux is saying in the paper didn't happen. San Diego Police is not in the business of booty patrol at Comic-Con. Apparently, San Diego Police is only in the business of booty patrol at Gay Pride. And that's the problem. And that's the problem in this case. So, you've got no evidence of any enforcement other than at Gay Pride. You have the officer who implemented the policy saying impetus was to lessen the nudity at Gay Pride. Did this new policy ever get written down? That's another problem, and that's one of the Arlington factors. There was no policy. I mean, it wasn't brought before city council. It wasn't even disseminated in a training briefing to the other police officers. This was his policy for his special events that he controlled. And that's another one of the problems, that there's no legislative history because it wasn't adopted in a formal fashion, which it should have been. Instead, it was adopted informally for his band of people that supervised the special events. So, does that informal policy rise to the level of a policy that would be, you know, reachable under Mnuchin? I think just— Do you have to look at whether the person's authority in adopting— I think just for his special events, John, he's the lieutenant, right? He's in charge of all these special events. Special events are events where people get a permit, they pay for the extra police protection, and then he's in charge of all these events. And there's a ton of them in the city of San Diego. He sets the policy at all those events. And all those special events, then, he is the Monell spokesperson. He's the person in charge. That's his jurisdiction. So he sets the policy there. And if you set a policy there that's different and apart from the rest of the city, I think that's where we have the equal protection problem. Now, turning just to the selective enforcement, individualized selective enforcement. Interesting. This court in Lacey announced a very important prism upon which to view the factual allegations of discriminatory selective enforcement. And this court said, a plaintiff's burden consists of putting forth some facts, either anecdotal or statistical, demonstrating that similarly situated defendants could have been prosecuted but were not. Okay. Anecdotal or statistical. The district court, in ruling against Mr. Walters in this case, at page 7, line 15, said the following. There is anecdotal evidence before the court that individuals wearing less than what Walters wore at the 2011 Pride event may not have been cited for public nudity at different times and in different settings. So in this case, the district court made the proper findings. It just didn't reach the right result. And that's part of the problem. So you have anecdotal evidence, a lot of anecdotal evidence of photos and videos and officers at the scene and women in g-strings. No tickets written whatsoever. So you have anecdotal evidence and statistical evidence that prove, in this case, there is two different standards. The other thing the district court did was made a finding that it would be difficult for these officers to know who was straight or who was gay at these events. And therefore, just because it was at Gay Pride, there's a lot of straight attendees at Gay Pride. How would you know? I think that that's a little disingenuous. Well, but it becomes important though, doesn't it? I mean, was he singling out Nesbitt because he was gay? Or was he singling out Nesbitt because he was at a Gay Pride event? So it wouldn't make any difference. It could be somebody who's straight and out there in a loincloth. And I wrestled with that myself. But I thought along the lines, what if we adopted, the city of San Diego adopted a noise abatement ordinance that was going to play only at Black History Month celebrations and not at any other celebrations? Wouldn't the reasonable inference be in that situation that this was aimed at the African American community and not anybody else? The fact that this was adopted for Gay Pride, I think the reasonable and rational inference is this is targeted towards homosexuals. But you're talking about selective enforcement though. You're talking about they selectively enforce this policy against Mr. Nesbitt because he's gay? Correct. Or because he was at Gay Pride? I think the policy was adopted for Gay Pride to bring the level of nudity down at Gay Pride. I think it was selectively enforced in the initial context of Mr. Walters, selectively because he's gay? Correct. Is there any evidence that they knew he was gay? Your Honor, other than the reasonable rational inference that can be drawn from the fact that he is at Gay Pride wearing a kilt and a thong and a kilt and enjoying himself at a Gay Pride event, I think the he's entitled to every reasonable inference at summary judgments. I guess you could draw a reasonable inference to that effect. Right. I think if we look at Anna Flores versus Morgan Hill, this court wrote, did we present enough evidence to raise the inference of discriminatory intent, not just conclusory allegations? So my burden, plaintiff's burden in this case, was to present enough evidence to raise the inference. And certainly, I think the inference is there, given the totality of the circumstances. Just turning now just briefly to the Fourth Amendment claim, the qualified immunity is what the district court rested the Fourth Amendment claim on. Fourth Amendment claim of qualified immunity cannot rest on a misunderstanding of the law. Officers interpreted the word buttocks to mean a complete covering of the bump area. That's not the accepted interpretation of that word. And an erroneous interpretation of the law does not support a finding of a qualified immunity. I'd like to save the rest of my time. What's the correct definition of buttocks? Well, according to Webster's, it's the rounded part that the person sits on in the back. And so when I showed the officers photos of women wearing normal bathing suits, they're saying it's the hips and the back and the upper thighs were all the buttocks that had to be covered. Really making criminals out of every beach goer in the city of San Diego. Well, it's just right up to the equator. I like that definition, Judge. We'll go with right up to the equator. I appreciate that. Thank you very much. You saved the balance of your time. Good morning, Your Honors. Bonnie Sue, Deputy City Attorney for the City of San Diego. Could you do me a favor and keep up your voice? Oh, I'm sorry. Bonnie Sue, Deputy City Attorney for the City of San Diego Appellees. First, I'd like to point out that there really is no credible evidence here establishing a material fact. Let's talk about the photographs that counsel has referred to. These lack foundation. They're hearsay. There's no one who's ever testified with respect to these documents. Having photos... Well, you know, at summary judgment, the evidentiary burden is not all that grave. It's admissible. Could there be admissible evidence? So at trial, they would have to dot their I's and cross their T's on the admissibility of the documents. They need to show that there's admissible evidence. Well, let me clarify that then. You've got evidence, photographs. Let's say photographs of someone in a bikini. Who's to say that indicates that person wasn't contacted? There's no admissible evidence to show... They would have to have somebody take a photo. I mean, who took the photo testifies to when they took the photo and what the photo is of. Yes, but also that that person was not subsequently contacted. For example, let's talk about Comic-Con. In the San Diego Union Tribune, there's a photograph of Lieutenant Neslight with a woman in a leotard. This is the following year. This photograph is one of the big pages of our local newspaper. He was in fact making a contact at that moment. Looking at the news articles with respect to that photograph, you would think the lieutenant is just chatting with this party goer. There's no documentation of that that you would have. Well, this is the thing. There is no documentation why this is the only citation because most people agree to Comic-Con compliance except for Mr. Walters. There's no documentation of the contact and the request. What are you saying, Ms. Shue, that this was a new policy that Lieutenant Neslight enacted when he became in charge of special events, but it was applied at pride events the same as other subsequent events? This is not a new policy. Let me clarify that. This is the San Diego Nudity Ordinance. This is the law. The fact that officers are applying the law, there's no policy. There's no request. Okay, let's talk about selective application of that ordinance because it had never been applied in this manner before. I think that's fairly undisputed in the record, right? No. In fact, at a prior event, Mr. Walters wore the same outfit and the police didn't enact the policy in the same way, did they? Well, just because you wear the outfit and I believe that was at San Francisco Pride, but wearing the outfit alone, if no officer comes in contact with you, there's no way with thousands of people that in every instance an officer is going to contact every single person or be able to see every single person. In addition, it's not a top priority. The officers are not out there to just try to spot nudity and try to enforce this law. They're out there for multiple reasons. The fact that they may come across one person on one incident and request that they put some shorts on or tie a shirt. There's evidence in the record that before this meeting at which Lieutenant Neslett attended, the San Diego Police Department endorsed a lax aversion and that they expected Pride attendees to comply with the one-inch rule, at least to create a triable issue of fact as to whether before this event there was the one-inch rule and subsequently then that there would be a more strict literal interpretation of the nudity ordinance. Is that fair to say? Well, even if that were contested, but even if that were, it's not a material fact. It doesn't indicate anything. You need, for selective enforcement, you need to show that sexuality was the purpose. That it was enforcing the law based solely on someone's sexuality, not because of a legitimate government purpose, which is to bring everybody into compliance at these family-oriented events, or what is becoming more family-oriented, where the public at large is attending these events where it's become more acceptable. It does not, it has to show that it's being enforced for the purpose of distributing. Right, but I think you're now mixing apples and oranges because we're talking about whether there's a triable issue as to a difference in policy or a change in policy, and now what you're talking about goes more towards whether there's discriminatory purpose, and I think that gets to the discussion that counsel had earlier with Judge Pius regarding inferences. Why isn't Mr. Walters entitled to all reasonable inferences in this case? Because there still are no facts that matter with respect to the elements in these causes of action. To show that there's unequal enforcement, you need some admissible evidence. Any evidence and just simply saying that you got a citation, the one person got a citation, is not, it's not evidence that it was selectively enforced. Let's take something completely, you know. Well, the one person got a citation who happens to be an attendee at a pride event, but the evidence is that there are other events, non-pride events, at which people were wearing a lot more, even under Judge Pregerson's definition, and yet there's no indication that there was enforcement there. It's not enough to create inference. We're not talking about the merits award here. We're talking about sufficient inferences to survive summary judgment. Well, there was evidence, though, because there were declarations from all three officers that said that they enforced this nudity ordinance at different events in San Diego. Not only were there declarations, but, you know, counsel has mentioned testimony of a model at Comic-Con wearing a very similar outfit the week after Mr. Walters. Aeon Flux, which is a comic book character who wears a very small, leather, strappy outfit, very similar to what Mr. Walters was wearing. She was contacted by these officers. There are photographs all over the internet with her tying a shirt around her waist and walking back to her hotel. She was interviewed by Howard Stern, and she talked about this event, being contacted by these officers. Lieutenant Neslite testified with respect to this contact. Clearly, other people similarly situated are being contacted by the police department. There are no other citations because everybody comes in compliance. Everybody else has agreed to tie a shirt around their waist, put shorts on, change clothing, so that there's no comprehensive statistical study showing that it's only enforced here and not enforced there. In fact, the evidence is to the contrary. How did the officers know when to enforce the ordinance? Well, again, this would fall into the Fourth Amendment qualified immunity. The interpretation of buttocks is up to an officer's discretion. If they believe something violates that ordinance, it's just reasonable suspicion to believe they're violating crime. It doesn't mean that they have to have probable cause. It doesn't mean probable cause. I mean, I'm sorry. They have probable cause, but that it has to be proven at trial. They just need reasonable suspicion. Now, counsel talks about this mistake of law. The mistake of law that's outlined in cases are, let's say, an officer comes from another state, and the laws with respect to nudity in this other state are more strict or that they're not as strict. Then he comes to California and enforces the law from another state, thinking that that's California law. These are the mistakes of law, not with respect to the term buttocks, which I believe that most people have a general idea of what a buttocks is. Clearly, from the photographs, we do see portions of his side rump. Officers here are entitled to that qualified immunity in thinking, having reasonable suspicion, that he is in violation of this ordinance and that they are entitled and absolutely immune from making that contact, having that conversation, requesting him to put shorts on. How many people were cited that day? The day of this? Mr. Walters is the only person. Only person. Everybody else, similarly dressed at the Pride event. There's no other citations. He was in a bar, was he? He was in a public park, Balboa Park. Public park. What street was that on? Off of 6th Avenue, about three miles from downtown. Three miles from downtown? Yes. I don't remember that bar. Where the San Diego Zoo is, where the museums are. No, I'm just kidding you. Oh, okay. I spent my time in San Diego in the hospital a long time ago. 1945, it was a different town. The tallest building there was the Grant Hotel. You can't even see it. So, he was the only one that was cited and he was quite a distance from the parade. Well, the parade was over. The parade was over? Yes. But from the location of the parade? The parade passes through Balboa Park and then the festivities, the festival happens in Balboa Park. The parade goes through Balboa Park? Yes. The park itself? Not the park itself, but the roads around. Oh, the roads around. The Naval Hospital is on Balboa Park. Yes. So, I don't know the exact parade route, if at some point they go through. I'm not sure, but it goes around Balboa Park. So, is it your, the city's position that on the evidence they presented, no reasonable trier of fact could conclude that there was any discriminatory purpose here? Absolutely. I believe the district court was correct in that finding that based on the evidence, there was no evidence that shows discriminatory. Okay. And there's nothing that shows that sexuality, his status as a homosexual male is what motivated this contact. He can't show that if he were a straight male wearing that outfit, he would not have been also contacted. There's absolutely no evidence of that. So, the district court didn't, I can't remember now because I looked at this earlier in the week, but did the district court address qualified immunity for the officers? Yes, it did. And it did find the officers had qualified immunity. But I guess if there's no constitutional violation, then there's no need to get to the second part. Absolutely. So, in your understanding of the law in this area, if the case were to go to trial, what do you believe he would have to prove in order to prevail? Well, I believe the burden would be on the plaintiff, but if the plaintiff were able to shift that burden, then... No, I'm talking about, not you, I'm talking about what would he have to persuade the jury? That there was, in fact, a policy enacted by the San Diego Police Department to discriminate or either to purposely discriminate or it had a discriminatory effect on only this protected class, which would be homosexuals. Could it be just anybody who participated in the gay parade? No, because that's not a protected class. The protected class is homosexuality. If there are no further questions, then I would submit. No, it's really too bad that people sitting back there, they have no idea what we're talking about. Unless they read the San Diego papers, I guess. But on what he's wearing and... He could be a gladiator that's dragged into the Coliseum. Thank you, Your Honors. Okay. Thank you, Counsel. We have a few minutes for rebuttal here. His only guy got sighted. He's the only one who was sighted, but the testimony was that other people wearing similar outfits were actually contacted, other gay individuals at the Pride parade. But he was in a bar, wasn't he? No, that's the interesting thing. What kind of bar? The parade stops at the end of the park. And then the park has a festival sponsored by the San Diego Pride Association. And so to get into the festival, you've got to pay a ticket. And so he paid his ticket, got in, and it's a fenced area. So he's in the park, fenced in. And then within that festival, there's a beer garden. So he had to actually show an ID and pay an additional fee to get into the beer garden. So he's standing in the beer garden, having a picture taken, when he's approached and detained. So he's in the park, on city park land. Not in an enclosed festival, in an enclosed beer garden. That's when he's detained. So I think the Council for the City continues to... The parade was over. The parade was over. Correct. The parade is over. And what caused the officer to go in in front of him? He didn't like the cut of his jib, apparently. I'm not sure, Your Honor. But he stood there in the beer garden, watched my client for a few minutes, and then approached him and said, Your outfit's borderline. And my client was responsible. I'm not sure how I could be borderline. And he said, Well, my opinion is the only one that matters. I'm in charge of this event. He left and came back with four other officers. They grabbed him, took him out of the beer garden, took him out of the festival, took him outside. And that's when they cited him for public nudity alone. That was the only citation. That was given to him was public nudity. The evidence was that other individuals dressed similarly that day were also approached. Were also approached by this officer and told to cover up or do something. Is there evidence that people attending other events, like the over-the-line event, lots of scantily clad women at the event, that they were also contacted pursuant to the policy? No evidence at all. None. In fact, the evidence is just the opposite. These exact same officers who arrested Mr. Walters are seen in photographs standing next to women with sashes on just participating in the beauty contest wearing G-strings. These exact same officers who arrested him are seen in the company of women in G-strings with no issue. So that's where we start having the problem. That's just not fair. You can't have one standard for public nudity that applies to gay pride and another standard altogether that applies everywhere else. You just can't have it. And the interesting thing about the Aeon Flux, I just wanted to read exactly what it is that the San Diego Police Department said about this. And this is at page 202. And they said, Andre Brown said, it must have been somebody at private security at the event. We aren't in the business of policing that. So that's the official police department spokesperson, said that they never contacted anybody at any other event, this particular Comic-Con event. Just with respect to qualified immunity, I think that reasonable minds can differ on qualified immunity to the Fourth Amendment claim. Reasonable minds cannot differ on qualified immunity to the Fourteenth Amendment claim. I think the right to be free from unfair, arbitrary, and capricious treatment is well established. And I think that the evidence, at least there's a tribal issue of fact as to whether that's what happened. So what's left here? You've got your strongest claim is the equal protection. I take it you agree with that? I would definitely agree with that. You gave up on the battery. I did. Qualified immunity as to the Fourth Amendment claim, if reasonable mind can differ, that's qualified immunity right there. I can't argue with that position, Your Honor. So what about the state false arrest claim? Well, the state false arrest claim, again, rests on whether or not there's probable cause for the arrest. And I think probable cause for the arrest goes back to whether or not you can actually believe that this person was publicly nude. And I think if I'm willing to give up on the Fourth Amendment on qualified immunity, I'd have to thank and dismiss the false arrest claim as well. What about the Bain Act? Is that closer to the equal protection or the Fourth Amendment? I would argue the Bain Act is closer to equal protection, Your Honor. The Bain Act is threats or coercion in taking away his Fourteenth Amendment right to equal protection. So the city disputes your argument that there was even a separate policy. Yeah. I mean, the evidence at least— You said all they were doing was enforcing the San Diego nudity ordinance. That's the policy. Yeah, but, I mean, at this stage, you've got to look at that deposition testimony from the pride organizers. And that's what's really interesting because when Nislet stood in front of them and said, Okay, the one-inch strip rule is no longer in place. We're going to go with complete coverage of buttocks. And members of the pride stood up and said, Wait a minute. You're creating a double standard here. And that's the testimony. That's sworn deposition testimony. And in response, Nislet said, Well, technically, those guys at OTL and those guys on the beach, they're in violation too. And left it at that and didn't say he would amend it or change it or do anything. So when we talk about discriminatory intent, he was actually put on notice by members of pride that, Hey, you're discriminating against gay people in this policy. And it was brought to his attention, and he left it as such. And you have to understand that this change in policy from the one-inch strip to the full buttock, that was not announced at any other special event. No announcement where he got up and changed, Hey, we're changing the policy. That wasn't announced at Over the Line. That wasn't announced at Tomahawk. Would that have been headline news? I'm sorry? Would that have been headline news? It would have been. And actually, this case has garnered a lot of attention because the way the city is interpreting the policy makes criminals out of every beachgoer. And so it's gotten a lot of local coverage because in order to justify this stop in detention, you'd have to say that he was publicly nude. And if he's nude, then everybody's nude. Because he's wearing a 12-inch flap front and back, 12 inch by square, front and back. How can that be publicly nude and beaches and bathing suits not be? Do you have your equal protection claim, discriminatory enforcement claim, is that tied to the existence of a policy or is it separate? I have two separate arguments. I have one that's the existence of a policy, which is a policy adopted with discriminatory intent under Hunter v. Underwood, Gomillion v. Lightfoot, Pacific Shores, all those different cases, a policy adopted with discriminatory intent subject to injunction and is a violation of the Equal Protection Clause. So there's one. The second one is selective enforcement, that he was enforced selectively. Under the nudity ordinance. Under the due policy. My question was what if the jury says there's no fault? Under the nudity ordinance. I'm sorry, I misspoke. You're right. Under the nudity ordinance was selectively enforced against him. And, again, that's not selective enforcement on that issue. If we look back at Lacey v. Comerica County, that's a rational basis, and the rational basis, if we buy their argument that it wasn't. What you really have here is you have a sergeant that was put in charge and what did he say? He said they wanted a full Botox. Right. He said he wanted full coverage. He wanted full Botox coverage. Correct. And so that's a new policy that he announced. Correct. And then you had one gentleman who was cited because he was full of side. It was side. Side rope. It was full of, yeah. Side hips were exposed. And he had like a little leather apron about 12 inches wide on the front part of his body, and he had kind of a leather apron down the back. And he was wearing a thong. That's the whole case. And he was wearing thong underwear underneath, so just in case anybody's thinking that there's something else going on. He had underwear underneath as well. What did you say? Underwear underneath as well. He had underwear underneath? Yeah, underwear underneath. Was he wearing a skivvies? It was like a G-string kind of thing, you know. A little thing. Oh, I thought he was. No, no, no. He wasn't nude. I thought he was nude. No, no, no. He had like a Speedo type thing that was kind of more narrow up the back. So he had that on underneath with the flaps front and back, sides exposed, and gets cited for public nudity. All right. So why don't we just say that was a bad call by a police officer? Yes. Huh? Exactly. That's about it. Yeah. Okay. All right. Thank you so much. Thank you, Counsel. The matter is submitted at this time.
judges: Pregerson, Paez, Nguyen